# Appeal of Stoughton et al.

A guardian has ordinarily power to lease any of his ward's property of such character as makes it the subject of a lease; but without the approval of the Orphans' Court he cannot dispose of any part of the realty. Oil is a mineral, and being a mineral, is part of the realty, and a guardian cannot lease the land of his ward for the purpose of its development, as it would, in effect, be the grant of a part of the *corpus* of the estate of his ward.

November 22d 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Appeals from the Orphans' Court of *Butler county*: Of October and November Term 1875, Nos. 110 and 130.

These appeals were those of H. L. Taylor, John Satterfield, J. J. Vandegrift and George V. Foreman, parties doing business as H. L. Taylor & Co., John Siggins, Peter Hutchinson, Peter Grace, William G. Stoughton and David C. Rankin, guardians of Lewis Brown and Minerva Brown, minor children of Josiah Brown, appellants, and James M. Lambing, John A. Lambing, A. L. Campbell and Robert L. Brown, appellees. And the appeal of H. L. Taylor, W. G. Stoughton et al., from the decree of the Orphans' Court of Butler county, at No. 4, March Term 1874, made February 25th 1875, approving of a lease for oil purposes, made by David C. Rankin, guardian of Lewis Brown and Minerva Brown, minor children of Josiah Brown, to A. L. Campbell and James M. Lambing, recorded in Article of Agreement book, No. 1, p. 390, Butler county, and vacating or annulling a decree made in Orphans' Court, No. 36, June 1873, approving and confirming a lease of David Rankin, guardian, to W. G. Stoughton.

At June Term 1873, David C. Rankin, the guardian of Lewis and Minerva Brown, minor children of Josiah Brown, deceased, presented a petition to the Orphans' Court of Butler county, praying the court to confirm a lease for twenty years of the lands of his said wards, containing about 100 acres, to W. G. Stoughton, for oil purposes. On June 11th 1873, the court granted the prayer of the petition, and a decree was made accordingly. This Stoughton lease was duly recorded, and subsequently Stoughton sublet a portion of the land to Peter Grace and Peter Hutchinson, and the balance to H. L. Taylor & Co. At March Term 1874, James M. Lambing, John A. Lambing, B. B. Campbell and R. L. Brown, presented a petition to the Orphans' Court, which set forth that said David C. Rankin, guardian, had executed a lease to A. L. Campbell and James M. Lambing for forty acres of said 150 acres of land belonging to the heirs of Josiah Brown, deceased, for a term of twenty-one years, and for oil purposes, which lease, by assignments, was vested in the petitioners. That said lease was duly recorded in said county. That subsequently to the recording

[Appeal of Stoughton et al.]

of said lease, said David C. Rankin leased the whole tract afore-said to W. G. Stoughton without reserving therefrom said forty acres leased to petitioners. That said Stoughton lease is recorded, and that Grace, Hutchinson and Taylor & Co. are now claiming under said lease, and denying the right of your petitioners to hold and enjoy the said forty acres, notwithstanding said parties had notice of petitioners' lease before the taking of their lease, and that the lease of petitioners is much more beneficial to the Brown heirs than is the Stoughton lease. The petition then prayed for a citation to Rankin, Stoughton, Grace, Hutchinson and Taylor & Co., that the order approving the lease of Stoughton might be rescinded so far as it interfered with the lease of petitioners, and that the court should approve the lease of petitioners *nunc pro tunc*, as of the 4th of December 1871.

A citation issued, and answer was made by Stoughton for him-self and the others who held under him. Testimony was taken, and after argument, the court confirmed and approved said lease to A. L. Campbell and J. M. Lambing, and vacated the part of the order made at June Term 1873, affecting said forty acres.

From these decrees appeals were taken to the Supreme Court, the following errors being assigned :—

1. The lease of Lambing and Campbell was forfeited long before the date of the original decree, and they had no interest at that time or title to lands within the Stoughton lease.

2. By the acts and conduct of the appellees, they were estopped from setting up this alleged lease. and having the decree made in the Orphans' Court, No. 4, March Term 1874, approving it *nunc pro tunc.*

3. The original decree in this case having been made June 11th 1873, and the parties having entered into possession under it, and having expended large sums of money in developing said lease, on the faith of said decree, and a great length of time having elapsed before the vacation or revocation of the decree was asked for, and the lessees, Stoughton and those under him, having obtained vested rights under the said decree of June 11th 1873, the court had no power to revoke it.

4. The decree was unauthorized, and could only be made on the petition of the guardian, and not in an adverse proceeding against him.

The Supreme Court referred the cases to a master, to take tes-timony and report the facts, together with his opinion thereon, who reported, inter alia, that the lease to A. L. Campbell and J. M. Lambing was fairly obtained, and had its conditions been carried out, would have been beneficial to the Brown heirs, but that the lease was forfeited by the failure of said lessees to comply with its conditions. He, therefore, reported the following decrees :—

" In No. 110, of October and November Term 1875, appeal of

[Appeal of Stoughton et al.]

D. Rankin et al.     Appeal to the Orphans' Court of Butler county, at No. 4, of March Term 1874.

"And now, to wit: This cause came on to be heard in this court at this term, on appeal from the decree of the Orphans' Court, in and for the county of Butler, and was argued by counsel; whereupon it is considered, adjudged and decreed, that the decree of the said court be reversed and set aside, and that the record in this case be remitted to the said court, with directions to dismiss the petition of James M. Lambing, John A. Lambing, B. B. Campbell and R. L. Brown, at the costs of the petitioners, and that the appellees pay the costs of this appeal."     And

"In No. 130, of October Term 1875, appeal of W. G. Stoughton. Appeal to the Orphans' Court of Butler county, at No. 36, of June Term 1873.

"And now, to wit: This cause came on to be heard in this court at this term, on appeal from the Orphans' Court, in and for the county of Butler, and was argued by counsel; whereupon it is considered, adjudged and decreed, that the decree of the said court, made February 25th 1875, vacating in part a former decree, made in said case June 11th 1873, and taking off the confirmation of the lease by David C. Rankin, guardian of the minor heirs of Josiah Brown, deceased, so far as the same might affect the forty acres of land theretofore leased by said guardian to A. L. Campbell and James M. Lambing, be reversed and said aside; and that the appellees pay the costs of this appeal."

Forty-six exceptions were filed to the report of the master, all of which the master overruled.

*John M. Thompson* and *Charles McCandless*, for appellants.—The original decree in this case having been made June 11th 1873, and the parties, William G. Stoughton and his lessees, having entered into possession under it, and having expended large sums of money in developing said lease, on the faith of said decree, and a great length of time having elapsed before the vacation or revocation of the decree was asked for, and the lessees, Stoughton and those under him, having obtained vested rights under the said decree of June 11th 1873, the court had no power to revoke it.

The lease of Campbell and Lambing of December 4th 1871, should not have been approved *nunc pro tunc*, because the guardian did not join in the petition therefor, but was made a respondent thereto; and secondly, their lease had been forfeited by a failure to comply with its conditions.  But whatever the law may have been prior to the Act of April 18th 1853, Purd. Dig. 1242, since the passage of that act a guardian can make a lease of his ward's land only with the sanction of the Orphans' Court, and after the court is satisfied that it is to the interest of the minor that the lease should be made.

*Edward S. Golden* and *L. Z. Mitchell*, for appellees.—The master found the lease was fairly obtained and beneficial to the minors. In such case we think the guardian's act was valid, without the intervention of the Orphans' Court: Carskadden *v.* McGhee, 7 W. & S. 140; Bonsall's Appeal, 1 Rawle 274; Twaddle's Appeal, 5 Barr 15.

The court had the express power to make the decree prayed for, under the Act of 13th April 1854, Purd. Dig. 1246. By that act it is provided that wherever the court had the power to authorize the leasing in the first instance, and such leasing has taken place without this authority, the court may approve, ratify and confirm such leasing, and the effect of such subsequent action is equivalent to a previous authority. This power is unlimited either as to time or circumstances, and 'may be exercised in *all* cases and at any time. But even without the aid of this Act of Assembly, the power to make the decree prayed for is inherent in the court: Shepherd's Case, 27 P. F. Smith 303–4–5; Lane *v.* Nelson, 2 W. N. C. 216; Dougherty's Case, 19 P. F. Smith 293; Fitzgerald *v.* Stewart, 3 Id. 343.

It follows, as a matter of course, that if the court had the power to approve, ratify and confirm the lease of Campbell and Lambing, it had the power to vacate the approval of Stoughton's lease so far as it interfered with the prior lease.

Mr. Justice GORDON delivered the opinion of the court, January 6th 1879.

A guardian has, ordinarily, power to lease any of his ward's property that is of such character as makes it the subject of a lease, but without the approval of the Orphans' Court he cannot dispose of any part of the realty. Oil, however, is a mineral, and being a mineral is part of the realty: Funk *v.* Haldeman, 3 P. F. Smith 229.

In this it is like coal or any other natural product which *in situ* forms part of the land. It may become, by severance, personalty, or there may be a right to use or take it originating in custom or prescription, as the right of a life-tenant to work opened mines, or to use timber for repairing buildings or fences on a farm, or for *fire bote.* Nevertheless, whenever conveyance is made of it, whether that conveyance be called a lease or deed, it is, in effect, the grant of part of the *corpus* of the estate and not of a mere incorporeal right. In the case above cited, this is said to be so as to leases of coal lands for the purpose of mining, and there is no reason why the same doctrine should not apply to oil leases.

Not infrequently the oil forms by far the most valuable part of an estate, and to permit a guardian to dispose of it at will and without security, would often lead to consequences disastrous to his wards. Now Rankin's lease to Campbell & Lambing, as well as that to Stoughton, was, in fact, a sale of all the oil within the limits of the

[Appeal of Stoughton et al.]

leased territory. Its terms, inter alia, were, "the party of the second part to have the sole and exclusive right to bore and dig for oil in said lot, and gather and collect the same therefrom, for the term of twenty-one years from the date hereof." This certainly amounts to an absolute sale of all the oil contained within the land described in the lease, subject only to the royalty therein provided for. If we suppose a similar lease of timber growing upon, or coal or other mineral found in land, we can determine without hesitation that it is but an attempt to dispose of the realty, and so beyond the power of a guardian. As oil is not less part of the realty than timber and coal and not less valuable, there is no reason why it should not also come within the protective and supervisory powers of the court.

It follows, that the lease to Campbell & Lambing was of no force, bound nobody and was notice to nobody until properly approved. By force of the 3d sect. of the Act of 13th of April 1854, prima facie the decree of the Orphans' Court rendered this lease effective from its date, and if allowed to stand, it settles the controversy between these parties definitely in favor of the appellees. Two substantial reasons are urged why this ought not to be permitted; first, it interferes with the vested rights of other parties; second, it was made without the consent of the guardian. The Stoughton lease was approved, on petition of Rankin, June 11th 1873, whilst that of Campbell & Lambing was not approved until the 25th of February 1875. Not only so, but the court, at that time, vacated so much of the former decree as affected the land embraced in the Campbell & Lambing lease. This was not done on the motion of the guardian or on the ground of fraud or mistake in the procuring or entering of the decree, but on the petition of the lessees alleging want of notice to them of the previous action of the court. This was wholly irregular, since, for such reason, the court had no power to vacate a decree regularly made some twenty months previously. Supposing these parties to have been entitled to notice in order to make the confirmation of the subsequent lease binding on them, it but follows that without such notice the decree could not conclude them; it could only conclude the parties to it, hence, their rights were in no way jeopardized, and the court would certainly have exhausted its power in confirming their lease and so leaving them to settle their controversy, with Stoughton and his vendees, by an action of ejectment.

Rankin's lease, however, amounted to nothing more than a mere proposition, from which, at any time before it received the approval of the court, he might recede. Campbell & Lambing knew they were dealing with a guardian, and they should have known that he could not, on his own motion, dispose of his ward's property. They took nothing by their lease, and had no rights which were entitled to consideration in the confirmation of the subsequent contract. We

[Appeal of Stoughton et al.]

will not say that a case might not occur where the court might approve a contract notwithstanding the dissent of the guardian, but we do not think this such a case. According to the finding of the master, Campbell & Lambing had, by their laches, forfeited their contract, so that, had it been originally binding, they were not entitled to have it enforced, and, consequently, Rankin, in making the lease with Stoughton, but exercised a sound legal discretion which the court properly approved.

It is thus manifest, that on no point, found in this case, can the decrees under review be sustained.

> It is ordered that the decree reported by the master for this, Stoughton's Appeal, be adopted and entered as the judgment of this court.
>
> Also, that the decree reported by the master for the case of Rankin's Appeal, No. 119, October and November Term 1875, be accepted and entered as the judgment of this court.