The facts are stated in the opinion, by PALMER, P. J., of the court below as follows:
This is a bill in equity whereby the Schuylkill Trust Company, Trustee holder of a certain mortgage, seeks injunctive relief against the Schuylkill Mining Company, defendant, because of alleged waste due to mining several tracts of land in Blythe Township, Schuylkill County.
On January 2, 1924, the Philadelphia and Reading Coal and Iron Company, by mortgage and by deed of trust, mortgaged and conveyed to the Central Union Trust Company of New York, certain coal lands, collieries, breakers, shops, offices, mining machinery and *Page 536 
equipment to secure an authorized bond issue of $31,542,333-1/3. This mortgage is recorded in the office for the recording of deeds in and for Schuylkill County in Mortgage Book 10-Y, page 109.
Included in this mortgage are certain tracts of land located in Blythe Township, Schuylkill County, amounting to 1645 acres. While this mortgage was still in effect the Philadelphia and Reading Coal and Iron Company, by deed dated December 20, 1938, conveyed these tracts of land, among other tracts of land, to the Great Anthracite Coal Company, this deed being recorded in the office of the Recorder of Deeds of Schuylkill County in Deed Book 611, page 300.
With the mortgage still in effect, the Great Anthracite Coal Company, by deed dated July 27, 1939, conveyed the aforesaid tracts located in Blythe Township, to Vaughan Morgan, this deed being recorded in the office of the Recorder of Deeds in Deed Book 610, page 181. On November 24, 1939, Vaughan Morgan and Myrtle Morgan, his wife, conveyed the aforesaid tracts of land to the Schuylkill Mining Company, defendant herein, the said deed being recorded in Deed Book No. 617, page 17.
On May 15, 1929, the Central Union Trust Company of New York, the original trustee under the mortgage, changed its name to the Central Hanover Bank and Trust Company, and on May 1, 1939, F. Wolfe was appointed as individual trustee under the aforesaid mortgage.
By a supplemental Indenture dated December 30, 1944, between the Philadelphia and Reading Coal and Iron Company, of the first part, and the Central Hanover Bank and Trust Company and F. Wolfe, parties of the second part, and the Schuylkill Trust Company, party of the third part, the lien of the mortgage was continued upon the tracts of land owned by the defendant, the Schuylkill Mining Company and located in *Page 537 
Blythe Township, as well as upon other properties originally covered by the said mortgage.
On January 9, 1946, the plaintiff, Schuylkill Trust Company, trustee, filed its Bill in Equity and on February 28, 1946, preliminary objections were filed by the defendant, the Schuylkill Mining Company. These preliminary objections are now before us for consideration.
There were seven preliminary objections, but these have been reduced to two questions for argument. The first question is whether the mining of coal has depleted, spoiled and destroyed the property of the mortgagor in such a manner as to constitute waste in relation to the right of the mortgagee, so as to entitle the plaintiff to equitable relief by injunction. The second question being closely related to the first is that assuming the mining of coal did constitute waste on the part of the mortgagor, is the plaintiff entitled to injunctive relief because of the impairment of the security of the mortgage caused by the removal of the coal.
The mortgage in this case covers approximately eighty-four thousand acres of coal land in Schuylkill, Northumberland and Columbia Counties, as well as collieries, breakers, power-houses, offices, shops, and mining equipment placed upon this land. It, in fact, covered every item of real and personal property owned by the Mortgagor, the Philadelphia and Reading Coal and Iron Company, and used in pursuit of its mining operations. It contained in brief the following provision relating to the mining and removal of coal which appears in paragraph 7, page 133 of the Mortgage:
"Company agrees to maintain all fixtures and appurtenances, buildings, etc., 'subject to this mortgage and necessary and proper for the operation of the mortgaged property, in good repair, etc., and will, at all times, keep the coal lands and other properties subject to this indenture supplied with all machinery and equipment necessary and proper for the operation of the mortgaged property, and shall . . . make all . . . proper repairs, replacements, *Page 538 
etc.,' but the mining, production, use and sale of coal, or any other natural production of the earth without replacement shall not be construed as a violation of this section 7."
It is evident that the terms of the mortgage which constitute a binding contract between the mortgagor, its successors and assigns, and the mortgagee, and its successors and assigns, specifically averred that the mining of coal or other minerals upon the mortgaged premises shall not in any manner be construed to be waste.
Furthermore, it appears well established that the holders of the legal title to mining properties have the right to mine the property even to the extent of exhausting the mineral wealth as against the right of the holders of legal or equitable interests who are not in possession thereof without being subjected to charges for waste: Irwin v. Covode, 24 Pa. 162;Appeal of Westmoreland Coal Company, 85 Pa. 344, and Grubb'sAppeal, 90 Pa. 228.
The only exception to this rule is where the defendants engaged in mining operations do so in an unskilled or careless manner not in accord with good mining practice so as to render irreparable damage to the plaintiff's property. In this instance equitable relief in the form of injunction will be granted: See Brown v. Jermyn, 6 Lackawanna Jurist 1.
The averments of the plaintiff's bill in this case relating to the mining and removal of coal are as follows: "14. Since acquiring title to the tract of land described in the fourth paragraph hereof, under and subject to the mortgage aforesaid, Schuylkill Mining Company, the defendant, acting through its officers, agents, employees, licensees, lessees, contractors and others, has removed and has permitted others to remove, and is now removing and permitting others to remove, large quantities of coal from said tract of land. 15. In consequence of the removal of said coal, said land is being rapidly depleted, spoiled and destroyed, and the lien of said mortgage is *Page 539 
being and will continue to be impaired unless such removal and waste is restrained."
There is no averment in the bill that the defendant's mining operations are conducted in an unskilled, careless or destructive manner and, therefore, as the original mortgage contemplated the continued mining of the premises, the plaintiff is not entitled to injunctive relief on the ground of waste.
The plaintiff argues at some length that the defendants and its predecessors in title being in default under the terms of the mortgage, therefore, the mere mining of coal from the property becomes tantamount to waste. The question of waste and the question of defendant's defalcation upon the mortgage are two distinct questions of law. They are in no manner so correlated as to change the rights of the parties. If the plaintiff in this case could show waste on the part of the defendants he would be entitled to equitable relief. However, in this state, equitable relief will not be granted to a mortgagee upon default of the mortgagor as a full and adequate remedy at law exists for the mortgagee.
The distinction between the case at bar and the case ofHavens et al. v. Pearson, 334 Pa. 570, cited by the plaintiff to sustain the bill, lies in the fact that in the case at bar, the plaintiff, in the mortgage expressly permits removal of minerals from the mortgaged lands.
"As a general rule it is regarded as waste for a tenant in possession to open new mines or quarries upon the premises and take rock, oil, minerals, etc., therefrom, unless expressly orby implication included in his agreement with the reversioner." — 67 C. J. 618 — Sec. 15, citing Eley's Appeal, 103 Pa. 300.
"If mines are already opened, or if the lease permits theirbeing opened, it is not waste for the tenant to work them even to exhaustion." — Kier v. Peterson, 41 Pa. 357, 361 — alsoNeel v. Neel, 7 Harris 323. Irwin v. Covode, 12 Id. 162. *Page 540 
The basis of the decisions cited by plaintiff are created from principles applicable in matters of "waste"; and if it is not "waste" when expressly permitted, then the principle would follow that where it is expressly provided that the mortgagor may mine coal, that where spoliation of the property is allowed, it is not of the species of waste to mine the coal, and equity will not enjoin such act.
The equitable maxim "that equity will not assume jurisdiction where a complete and adequate remedy at law exists" has application to this circumstance.
This latter principle is closely related to the second question for argument, namely: that the mining of coal has so impaired the security of the plaintiff's mortgage as to entitle it to equitable relief. The only averment in the plaintiff's bill of complaint relating to the impairment of security of the mortgage appears in paragraph 15, supra. This is merely a bare statement to the effect that the security of the mortgage has been impaired. The scope and extent of the property covered by the mortgage is so vast that the mere allegation that the security of the mortgage is impaired by mining upon such a relatively small part of the mortgaged premises is not sufficient to sustain the bill. This statement should by necessity be strongly supported by averments of facts to show actual impairment of the plaintiff's security in order to entitle it to equitable relief. The right to equitable relief must be clear and not open to conjecture and speculation.
For the reasons set forth, the plaintiff's bill in equity must be dismissed.
Plaintiff appealed.